O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON SINCZEWSKI, | ⎞ | Case No. CV 15-09043-KES |
| Plaintiff, | ⎞ | MEMORANDUM OPINION AND ORDER |
| v. | ⎞ | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ⎞ | |
| Defendant. | ⎞ | |

Plaintiff Sharon Sinczewski ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.

## BACKGROUND

Plaintiff applied for DIB on April 1, 2011, and SSI on January 18, 2013, alleging the onset of disability on December 26, 2009, when she was 30 years old. Administrative Record ("AR") 178, 185. In 2009, Plaintiff obtained a

Master's degree in clinical psychology.  AR 422, 427, 541.  She was working as a clerk at a dental office, but that job ended in December 2009 when she was laid off due to "downsizing."  AR 31, 54, 241.  Plaintiff has been working part time (12 to 20 hours a week) as a cashier at Talbots, a women's clothing store, since 2012.  AR 26.

On February 18, 2014, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified.  AR 45-70.  On February 27, 2014, the ALJ issued a written decision denying Plaintiff's request for benefits.  AR 21-44.

At Step Two, the ALJ found that Plaintiff had the severe impairments of "vision problems; depression; anxiety; and borderline intellectual functioning." AR 26.  The ALJ also found that Plaintiff's cerebral palsy was not severe.  AR 27.

At Step Three, the ALJ determined that Plaintiff's impairments did not meet or equal a listed impairment, considering Listings 2.04, 11.07, 12.02, 12.04, and 12.06.  AR 28.

Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of medium work "limited to simple repetitive tasks; she cannot work at heights or operate moving machinery; she cannot do job[s] that require fine vision, meaning smaller than what you would normally see as an office helper; she cannot climb ladders, ropes, or scaffolds; and due to cerebral palsy, she is precluded from extreme exposure to concentrated cold or heat."  AR 29.

Based on this RFC and the testimony of a vocational expert ("VE"), at Step Five, the ALJ found that Plaintiff would be able to work as a packer, DOT 920.587-018; laundry laborer, DOT 361.687-018, janitor, DOT 381.687-018, or housekeeper, DOT 323.687-014.  AR 38.  The ALJ therefore concluded that Plaintiff is not disabled.  Id.

## II.

## ISSUES PRESENTED

Issue No. 1: Whether the ALJ erred at Step Two by finding that Plaintiff's cerebral palsy is not severe.

Issue No. 2: Whether the ALJ erred at Step Three by finding that Plaintiff's conditions do not meet or equal Listing 11.07 or 12.05.

Issue No. 3: Whether the ALJ erred at Step Five by finding that Plaintiff's RFC is consistent with work as a packer, laundry laborer, janitor and/or housekeeper.

Issue No. 4: Whether the ALJ erred in assessing the credibility of Plaintiff and Plaintiff's mother concerning the disabling effects of Plaintiff's symptoms.

See Dkt. 19, Joint Stipulation ("JS") 3.

## III.

## DISCUSSION

**A.    ISSUE ONE:  The ALJ did not err by finding that Plaintiff's cerebral palsy is not severe.**

**1.    Step Two of the Sequential Evaluation Process.**

The Secretary has established a five-step sequential evaluation process for determining whether a person seeking DIB is disabled.  20 CFR § 404.1520. At Step Two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or combination of impairments.  Id.  An impairment is "severe" if it significantly limits the ability to perform basic work activities for at least a consecutive twelve-month period.  20 CFR § 404.1520(a)(4)(ii); Social Security Ruling (SSR) 96-3p.  Basic work activities include understanding, carrying out, and remembering simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  20 CFR § 404.1521(b).  Plaintiff bears the burden of

proving that she has severe impairments.  Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005).

To evaluate the severity of alleged mental impairments in adults, ALJs "must follow" a "special technique" described by the regulations.  20 CFR § 404.1520a.  To use that technique, ALJs "must first evaluate [the claimant's] symptoms, signs and laboratory findings to determine whether [the claimant has] a medically determinable impairment(s)."  Id., ¶ (b)(1).  Upon determining that the claimant has a medically determinable impairment, the ALJ must then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) …."  Id., ¶ (b)(2).  Paragraph (c) provides that rating the degree of functional limitation "requires [ALJs] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation."  Id., ¶ (c)(1).

Based on all the evidence, the ALJ must rate the claimant's functional limitations in four areas: (1) daily living, (2) social functioning, (3) concentration, persistence and pace, and (4) episodes of decompensation. Id., ¶ (c)(3).  The ratings must be either "none, mild, moderate, marked or extreme."  Id., ¶ (c)(4).  If a claimant receives a rating of "none" or "mild" in the first three areas and "none" in the fourth area, then his mental impairment will be considered "not severe."  Id., ¶ (d)(1).

Finally, the ALJ must "document application of the technique in the decision."  Id., ¶ (e).  The ALJ's written decision "must incorporate the pertinent findings and conclusions based on the technique."  Id., ¶ (e)(4); see also Garrison v. Colvin, 759 F.3d 995, 1012-1013 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.")

**2.    The ALJ's Findings Regarding Plaintiff's Cerebral Palsy.**

Here, the ALJ followed the mandated technique and documented his

findings and conclusions.  The ALJ found that Plaintiff's cerebral palsy would have "no more than a minimum effect on her ability to work."  AR 27.  In support of this finding, the ALJ cited the following facts from the record:

• Plaintiff's treating physician back in 1989 opined that Plaintiff's cerebral palsy was "very mild."  Id. citing AR 397.

• A November 15, 2011, treatment note that says that while Plaintiff has cerebral palsy, she has "no musculoskeletal symptoms," "no neurological symptoms," and "thought content: revealed no impairment."  Id. citing AR 504.

• Dr. McMurtray, a neurology consultative examiner, examined Plaintiff on September 10, 2011, and he did not assess any physical limitations due to Plaintiff's cerebral palsy.  Id. citing AR 430 ("The claimant has minimal physical exam findings ….  I do not feel that the condition will impose any physical limitations for 12 continuous months.")

• State agency medical consultants Drs. Miller, Rudnick, Frankel and Gregg all opined that Plaintiff's cerebral palsy was non-severe.  Id. citing AR 77-78 [Rudnick], 94 [Frankel], 96 [Gregg], and 438 [Miller].

• Despite her cerebral palsy, Plaintiff was able to attend college, obtain a Master's degree, and work part time as a cashier.  Id.

**3.   Analysis.**

Plaintiff argues that the ALJ should not have relied on Dr. McMurtray, because his opinion was "flawed" by the following inconsistency: he found that Plaintiff had vision deficits, but he did not ascribe any functional limitations to those deficits.  JS 4 citing AR 430.  This alleged "inconsistency" in Dr. McMurtray's opinions concerning Plaintiff's eyesight, however, has no tendency to render unreliable his findings that Plaintiff's cerebral palsy did not cause functional limitations – particularly when that finding is consistent with all of the reviewing physicians' opinions.  Indeed, Plaintiff told Dr. McMurtray

that her cerebral palsy was not the cause of her functional limitations, other than affecting her balance and causing her to have difficulty typing.  AR 427.

Next, Plaintiff argues that the ALJ should not have relied on the fact that Plaintiff was able to obtain a Master's degree and work part time as a cashier with cerebral palsy, because she was only able to do those things with "great accommodation."  JS 13.  Even if that is be true, it was not legal error for the ALJ to consider that she <u>did</u> do those things, despite her cerebral palsy, when assessing the functional limitations attributable to that condition.

Finally, Plaintiff points to her own testimony that her cerebral palsy impacts her ability to work on a full-time basis.  JS 4 citing AR 50-51.  As discussed below, the ALJ gave legally sufficient reasons to discredit Plaintiff's testimony concerning the disabling effects of her symptoms.

Ultimately, Plaintiff fails to point to any doctor who opined that her cerebral palsy caused moderate, marked or extreme functional limitations (other than vision deficits and balance, for both of which the ALJ accounted in the RFC).  Plaintiff failed to carry her burden of proving that that her cerebral palsy was a "severe" impairment.  Thus, the ALJ did not err in concluding that Plaintiff's cerebral palsy was non-severe.

**B.** **ISSUE TWO:  The ALJ did not err by finding that Plaintiff's conditions do not meet or equal Listing 11.07 or 12.05.**

**1.** **Step Three of the Sequential Evaluation Process.**

At Step Three of the sequential evaluation process, an ALJ considers whether an applicant has an impairment or combination of impairments that meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.  The purpose of the Listing is to "describe[] for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."

20 C.F.R. § 404.1525(a).  Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs."  Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995).  If the claimant's impairment meets or equals one of the listed impairments, then he qualifies for benefits without further inquiry.  20 C.F.R. § 416.920(d); Sullivan v. Zebley, 493 U.S. 521, 525 (1990).

The claimant bears the burden of proving that he has an impairment that meets or equals a listed impairment.  Zebley, 493 U.S. at 530 (noting burden of proof rests with claimant to provide and identify medical signs and laboratory findings that support all criteria for step-three impairment determination).  "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment."  Id. (quoting 20 C.F.R. § 404.1526); see also 20 C.F.R. § 416.926.  A "generalized assertion of functional problems is not enough to establish" medical equivalence.  Id. at 1100.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments."  Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not satisfy Listing).  An ALJ's decision that a plaintiff did not meet a listing must be upheld if it was supported by "substantial evidence."  Warre v. Comm'r of Soc. Sec. Admin.,

439 F.3d 1001, 1006 (9th Cir. 2006).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (internal quotation marks omitted).  When evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion.  Id.

### 2.    Listing 11.07.

Listing 11.07 falls under Section 11.00 addressing neurological impairments.  In order to meet Listing 11.07, a claimant must establish that he/she has cerebral palsy with "(A) IQ of 70 or less; or (B) Abnormal behavior patterns, such as destructiveness or emotional instability: or (C) Significant interference in communication due to speech, hearing, or visual defect; or (D) Disorganization of motor function as described in 11.04B."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.07.

Plaintiff contends that she has been diagnosed with cerebral palsy and has the "requisite IQ score."  JS 17.  Plaintiff points to a Department of Developmental Services ("DDS") case analysis record from 2012 saying that Plaintiff's IQ was 62 when she was in 11th grade.  AR 462, 465.  In contrast, in January 2012, a date within the claimed period of disability, Plaintiff's IQ was 74.  AR 475.

Plaintiff argues that the ALJ should have treated her IQ of 74 as if it were 70, because IQ testing has a five-point margin of error.  JS 16.  The Court is unpersuaded.  The Listings establish certain "bright line" thresholds, and nothing in the social security regulations or case law suggests that those thresholds should be applied in a fuzzy, "plus or minus" fashion to account for margins of error in diagnostic testing.  The ALJ did not err in relying on Plaintiff's most recent IQ test score of 74 to determine that Plaintiff does not meet Listing 11.07.  AR 28 n.1.

### 3.     Listing 12.05.

a.     Requirements.

Listing 12.05 falls under Section 12.00 addressing mental disorders. Listing 12.05 covers "intellectual disability."  The introduction to all of the Section 12.00 listings explains how to evaluate a claimant seeking to meet Listing 12.05, as follows:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.  Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations.  For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).  If the additional impairment(s) does not cause limitations that are "severe" …, we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function,"….  Paragraph D contains the same functional criteria that are required

under paragraph B of the other mental disorders listings.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

The specific requirements to meet Listing 12.05 are as follows:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
OR

B. A valid verbal, performance, or full scale IQ of 59 or less;
OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

10

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

b.       Administrative Proceedings.

Plaintiff's counsel filed a Representative Brief urging the ALJ to find that Plaintiff's conditions satisfied Listing 11.07.  AR 176.  The brief did not discuss any other listings.  In his opinion, the ALJ discussed not only Listing 11.07, but also Listings 12.02, 12.04 and 12.06.  AR 28.  The ALJ did not, however, discuss Listing 12.05.

c.       Analysis.

Plaintiff argues that the ALJ erred by failing to discuss Listing 12.05.  JS 17.  Plaintiff contends that she meets the requirements of Listing 12.05-C.  Id. According to Plaintiff, "only one valid IQ score is required to make a finding of 'disabled' pursuant to Social Security listing 12.05," and Plaintiff was determined to have an IQ of 62 in 11th grade.  Id.

The Commissioner counters that ALJs are not required to "embark on an expedition to explore every possible listing."  JS 19 citing Abreu v. Astrue, 303 F. App'x 556, 557 (9th Cir. 2008) ("The ALJ is not required to perform a detailed analysis for every possible listing ….").  Furthermore, the ALJ's failure to consider Listing 12.05, if error, is harmless, because Plaintiff does not satisfy it.  First, Plaintiff has performed gainful activity (i.e., her cashier job at Talbots) during the period of claimed disability, thereby demonstrating a functional capacity that is too high to satisfy a Listing.  JS 19-20 citing 20 C.F.R. § 404.1525.  Second, Plaintiff was able to graduate from college and

obtain an advanced degree, accomplishments which are inconsistent with presumptively work-precluding intellectual disability.  JS 20; see Gomez v. Colvin, 2016 U.S. Dist. LEXIS 15252, at *30 (N.D. Cal. Feb. 8, 2016) (finding no error in ALJ's determination that plaintiff with IQ of 69 did not meet Listing 12.05, in part based on plaintiff's academic record).  Third, Plaintiff's only IQ test score from the period of claimed disability was 74, which is too high to satisfy Listing 12.05.  JS 19 citing AR 475.

The ALJ did not err by failing to consider Listing 12.05.  Even if he had considered it, there is insufficient evidence in the record to show that Plaintiff meets it.  The Listings describe impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity."  Sullivan v. Zebley, 493 U.S. 521, 532 (1990) (emphasis in original).  Plaintiff's condition has not prevented her from performing gainful employment, i.e., working part time as a cashier.  Furthermore, to satisfy a Listing, the claimant must exhibit the required functional limitations within the claimed period of disability.  An IQ test from 11th grade – while useful to establish the onset of developmental disability before age 22 – cannot be used as evidence that Plaintiff meets Listing 12.05-C at age 30 when her more recent IQ test score was too high to satisfy that Listing.  Moreover, per Gomez, an ALJ can disregard even an IQ score below 70 if that score is inconsistent with the claimant's academic accomplishments and activities of daily living.  Here, the ALJ cited Plaintiff's academic accomplishments and activities of daily living as inconsistent with her claim of total disability.  AR 28.

**C.   ISSUE THREE:  The ALJ did not err by finding that Plaintiff's RFC is consistent with work as a packer, laundry laborer, janitor and/or housekeeper.**

At Step Five of the sequential evaluation, the ALJ will find a claimant "not disabled" if he or she is capable of adjusting to "any other work" existing

in significant numbers in the economy.  20 C.F.R. §§ 404.1520(g), 404.1560(c).
At Step Five, "[a]n ALJ may take administrative notice of any reliable job
information, including information provided by a [vocational expert]." Bayliss
v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  The VE's "recognized
expertise provides the necessary foundation for his or her testimony" such that
"no additional foundation is required." Id.  An ALJ may even rely on expert
testimony which contradicts the DOT, "but only insofar as the record contains
persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d
1428, 1435 (9th Cir. 1995).

### 1.   Packer and Laundry Laborer.

Plaintiff points out that both the packer and laundry laborer jobs
identified by the ALJ require occasional near acuity.  (DOT No. 920.587-018;
DOT No. 361.687-018).  JS 27.  Plaintiff contends that this requirement is
inconsistent with her RFC, which precludes her from doing any "job that
require[s] fine vision, meaning smaller than what you would normally see as
an office helper." AR 29.  Alternatively, Plaintiff argues that the ALJ erred by
stating her RFC in terms of "fine vision" rather than using the terms "near
acuity" and "far acuity" which are defined. JS 27.  "Far acuity" means
"clarity of vision at 20 feet or more" while "near acuity" means "clarity of
vision at 20 inches or less." See Selected Characteristics of Occupations,
Appendix C (U.S. Dept. of Labor 1993).

The Commissioner argues that there is no inconsistency between the
DOT's description of both jobs and Plaintiff's RFC, because the RFC does not
preclude Plaintiff from doing tasks that occasionally require clear vision at 20
inches or less.  Rather, the RFC precludes Plaintiff from doing tasks that
require "fine vision," which refers to the *size* of the items viewed, not their
*distance* from the viewer.  The ALJ explained to the VE, "Normal vision is
authorized, so fine vision meaning smaller than what normally you would see

13

as an office helper."  AR 65.

The ALJ crafted this restriction based on evidence in the record. Plaintiff testified that when she worked at the dental office, she had trouble filing patient charts because "the lettering was so small that it was really hard for me to see the names …."  AR 53.  Plaintiff reported, however, that she could do other tasks that involve reading standard-size type, such as leisure reading, writing, working on the computer, and using a checkbook.  AR 208-09.  She has worn prescription glasses since age four.  AR 211.  Dr. Miller opined concerning Plaintiff's vision, "She would not be limited in a typical workplace but would have problems with activity requiring optimal vision (constructing printed circuits, etc.)."  AR 442.

The requirement of occasional near acuity, i.e., occasionally needing to see something clearly that is located 20 inches or less away, is not inconsistent with Plaintiff's RFC – so long as the thing needing to be viewed is not "smaller than what normally you would see as an office helper."  There is no indication in the DOT that working as a packer or laundry laborer requires seeing things "smaller than what normally you would see as an office helper."  Thus, there is no inconsistency between the VE's testimony and the DOT that the ALJ needed to reconcile.

### 2.    House Keeper.

Plaintiff's RFC precludes her from work that would require her to operate "moving machinery."  AR 29.  According to the DOT, housekeeping work requires cleaning objects and premises by methods such as "washing with water, steam, and cleaning agents; brushing, wiping, sweeping, raking, and scraping; using suction, compressed air, and ultrasonic equipment."  JS 28 citing DOT.  Because suction vacuum cleaners often have wheels, making them moving machines, Plaintiff contends that housekeeping work as described by the DOT is inconsistent with her RFC.  JS 27-28.

It seems probable that the ALJ meant to refer to heavy or industrial machinery rather than any sort of "moving" machinery.  Dr. Miller indicated that Plaintiff should avoid concentrated exposure to "hazards (machinery, heights, etc.) and further explained that she "should limit working at unprotected heights and operating heavy machinery due to her vision."  AR 443.  A vacuum cleaner is not commonly understood as a hazard.  Nothing in the record indicates that Plaintiff's vision deficits would limit her ability to operate a vacuum cleaner.  To the contrary, in her Adult Function Report, Plaintiff lists weekly "vacuuming" as a household chore that she is able to do.  AR 207.

This Court finds that there is no inconsistency between Plaintiff's RFC, as reasonably interpreted, and the DOT's description of housekeeping work.  Even if there were, the elimination of the housekeeper occupation would be harmless, because the ALJ identified three other occupations.  AR 38.

### 3.   Janitor.

Plaintiff does not dispute that the DOT's description of the janitorial occupation identified by the ALJ (see AR 38) is consistent with her RFC.  In fact, she incorrectly states that the ALJ identified only three potential jobs, and she still did not address janitorial work in her reply concerning Issue Three.  JS 26, 33.  Thus, any error concerning the other three occupations identified by the ALJ at Step Five would be harmless.  For these reasons, the ALJ's Step Five findings are legally sufficient.

### D.   ISSUE FOUR:  The ALJ did not err in assessing credibility.

### 1.   Applicable Law.

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability

benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at

1284; Thomas, 278 F.3d at 958-59.[1]

An ALJ may discount the testimony of lay witnesses only if he provides specific "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.")  As one example, inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay witness. See Bayliss, 427 F.3d at 1211, 1218; Plaza v. Astrue, No. CV 12-1029, 2013 U.S. Dist. LEXIS 8029, at *20 (C.D. Cal. Jan. 18, 2013) (finding harmless error in ALJ rejecting mother's third-party function report on improper grounds, because germane reason for discounting report – that witness's testimony contradicted by medical records – existed).

## 2.   Plaintiff.

The ALJ found Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms "less than fully credible."  AR 30.  As reasons, the ALJ cited (1) Plaintiff's ability to work satisfactorily as a part-time cashier since 2012, (2) inconsistency with the objective medical evidence, (3) her limited treatment for mental health impairments, (4) evidence

---

[1] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims.  SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character.  Murphy v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016).  SSR 16-3p took effect on March 16, 2016, and therefore is not applicable to the ALJ's decision in this case.  Id.

that Plaintiff only stopped working in December 2009 because her employer was "downsizing," not because of any disability, and (5) her "normal" level of daily activity.  AR 30-31.

One "clear and convincing" reason is sufficient to discount a claimant's testimony.  Here, Plaintiff neither mentions nor contests the ALJ's finding that her credibility was diminished because of the evidence that she had "stopped working for reasons not related to the allegedly disabling impairments." JS 36 citing AR 31.  Plaintiff alleged that her onset date of disability was December 2009. AR 178.  However, in her disability report, Plaintiff reported that she stopped working in December 2009 because her job at the dental office became unavailable.  AR 241.  At the administrative hearing, she testified that she was laid off because they were "downsizing" or wanted someone with "more dental experience."  AR 54.  In her Adult Function Report, Plaintiff repeatedly attributed various of her functional limitations to conditions she has had since birth, rather than conditions that started in December 2009.  AR 206, 210.  The ALJ properly considered this factor in his credibility analysis.  Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (holding ALJ validly discounted credibility due to claimant's admission that he stopped working because he was laid off); Drouin v. Sullivan, 966 F.2d 1255, 1256 (9th Cir. 1992) (rejecting pain testimony because claimant was laid off from work for reasons unrelated to her subjective symptoms).

The ALJ also properly found that Plaintiff's job as a cashier at Talbots was inconsistent with her allegation that she is unable to work due to disability.  See 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").  This ongoing work activity diminished Plaintiff's credibility, because it showed that she was "able to work and continues to work despite her impairments."  AR 31.  Indeed, Plaintiff was working 12-20

hours a week for at least two years after she claimed that she became disabled, and she was "performing well" on the job.  AR 26, 31, 264-65.  Plaintiff's cashier job at Talbots involves "work[ing] with customers one-on-one at the counter or in the fitting room."  AR 26, 49-50. The ALJ noted that the Talbots job requires Plaintiff to deal with the public, and she has been able to do this job for years despite her social anxiety.  AR 28.  A September 2012 note from Plaintiff's Department of Rehabilitation employment counselor indicated that Plaintiff no longer required the service because she had successfully reached her employment goal; she had been employed for over 90 days in a competitive job; and she was satisfied with her employment.  AR 31, 264-65. Even if Plaintiff required assistance to find a job, the record shows that she was able to maintain the job successfully and perform satisfactorily.

Third, the ALJ correctly noted that Plaintiff reported few restrictions in her activities of daily living.  AR 28.  Although Plaintiff alleged that she had social anxiety, she told Dr. Martin that she got along "very well" with friends and family, and she also reporting getting along "well" with authority figures. AR 28, 211, 473.  She admitted that she was able to engage in activities like working part time, handling finances, working on the computer, watching television, going out for daily walks, doing household chores, shopping, preparing her own meals, and going to church.  AR 31, 205-09.  She had no problems with her personal care, used public transportation, went out alone, and handled money.  AR 31, 206, 208.  She engaged in personal interactions, including spending time with her friends online daily, on the phone weekly, and in person monthly.  AR 31, 209.  The ALJ found that some of the physical and mental abilities and social interactions required to perform these activities are the same as those necessary for obtaining and maintaining employment, such that, Plaintiff's ability to participate in such activities diminished the credibility of her allegations of disabling functional limitations.  AR 31.

The extent and nature of Plaintiff's daily activities was an acceptable factor for the ALJ to consider in assessing her credibility. 20 C.F.R. § 404.1529. If "a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989).

Having determined that the ALJ gave at least three clear and convincing reasons for discounting Plaintiff's testimony, this Court declines to reach the sufficiency of the ALJ's other stated reasons.

### 3.   Plaintiff's Mother.

The ALJ considered the Third Party Function Report completed by Plaintiff's mother, Linda Eggli, as well as her testimony at the hearing. AR 31-32 citing AR 57-62, 225.

The ALJ gave "little weight" to Ms. Eggli's testimony for at least three reasons. AR 32. First, the ALJ found that Ms. Eggli's statements reflected many of the same limitations asserted by Plaintiff, and the ALJ had already discounted Plaintiff's testimony. Id. Second, the ALJ found that Ms. Eggli might have a "financial interest in seeing the claimant receive benefits in order to increase the household income since the claimant was living with her." Id. Third, the ALJ found that Ms. Eggli's testimony was not supported by "clinical medical evidence." Id.

Each of these reasons is supported by substantial evidence in the record. First, while Ms. Eggli's testimony was not identical to Plaintiff's, both asserted that Plaintiff's impairments rendered her unable to work – an assertion that the ALJ found less than fully credible for the reasons discussed above. See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009) (holding that if an ALJ gave sufficient reasons for rejecting the plaintiff's statements, those

reasons are equally germane to similar statements by a lay witness).

Second, the ALJ may properly observe that a lay witness might be influenced by a desire to help the claimant because of their close relationship. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (finding no error in ALJ's consideration of witness's close relationship to claimant in assessing credibility). Here, Plaintiff lives with and is supported by her mother. AR 32, 225. As the ALJ stated, her mother has a clear financial interest in Plaintiff receiving benefits. Thus, this reason was sufficiently germane to Plaintiff's mother.

Third, the ALJ explained that symptoms from Plaintiff's mental impairments were improved by medications, and even when she was not taking medications, she was able to continue working at Talbots. AR 32 citing AR 30-31. Thus, the ALJ identified an inconsistency between the medical evidence and Ms. Eglii's opinion that Plaintiff's mental impairments render her unable to work. Inconsistency with the medical evidence is a sufficient, germane reason for discounting a lay witness's statements. Bayliss, 427 F.3d at 1218.

Accordingly, neither the ALJ's assessment of Plaintiff's testimony nor of Ms. Eglii's testimony warrant reversal.

## IV.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: <u>November 07, 2016</u>

KAREN E. SCOTT
United States Magistrate Judge